UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   14-CV-01521 (JBW)(VMS)
SARAH BROWN,

                                Plaintiff,

                - against -

SECURITAS SECURITY SERVICES USA, INC.,
NAI LONG ISLAND, BOARD OF MANAGERS OF
PORTICO AT GREAT NECK CONDOMINIUM, and
ELVIN MURRILLO *Individually*,

                               Defendants.
------------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

       Plaintiff, SARAH BROWN, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the New York State Executive Law §296, et. seq. ("NYSEL"), seeking damages to redress the injuries she has suffered as a result of being **sexually harassed** and **discriminated against** by her employer solely due to her **gender (female)**, and then **retaliated against** and **terminated** from her job solely for complaining of sexual harassment.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

1

3. This Court has supplemental jurisdiction over the claims of Plaintiff brought under State law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b)(1), based upon Defendants' residencies within the counties of Nassau and Suffolk within the Eastern District of New York.

5. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to this claim occurred within the County of Nassau within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue from the EEOC, dated February 5, 2014, with respect to the herein charges of discrimination.

8. This Action has been commenced within 90 days of receipt of said Right to Sue.

## PARTIES

9. At all times relevant hereto, Plaintiff SARAH BROWN ("BROWN") is a resident of the State of New York, County of Nassau.

10. Upon Information and belief, at all times relevant hereto, Defendant BOARD OF MANAGERS OF PORTICO AT GREAT NECK CONDOMINIUM ("BOARD") was an unincorporated residential condominium association, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 36 Bond Street, Great Neck, New York 11021.

11. At all times relevant hereto, Defendant BOARD owned, operated and controlled "Portico at Great Neck Condominium," located at 36 Bond Street, Great Neck, New York 11021.

12. At all times relevant hereto, Defendant NAI LONG ISLAND ("NAI") was a Domestic Corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 3 Huntington Quadrangle, Suite 307N, Melville, New York 11747.

13. At all times relevant hereto, Defendant NAI was responsible for managing "Portico at Great Neck Condominium."

14. At all times relevant hereto, Defendant SECURITAS SECURITY SERVICES USA, INC. ("SECURITAS") was a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal executive office located at 4330 Park Terrace Drive, Westlake Village, California 91361.

15. At all times relevant hereto, Defendant SECURITAS was responsible for providing security services at "Portico at Great Neck Condominium."

16. At all times relevant hereto, Plaintiff BROWN was a full-time employee of Defendant SECURITAS, Defendant NAI, and Defendant BOARD and worked at all times relevant hereto at "Portico at Great Neck Condominium."

17. Upon information and belief, at all times relevant hereto, Defendants NAI, BOARD, and SECURITAS were joint employers of Plaintiff BROWN, were empowered to hire and fire Plaintiff BROWN, to discipline and supervise Plaintiff BROWN, to set the terms and conditions of her employment, and to promulgate work rules and assignments.

18. Upon information and belief, at all times relevant hereto, Defendant ELVIN ("MURRILLO") was and is a resident of the State of New York.

3

19. Upon information and belief, at all times relevant hereto, Defendant MURRILLO was an employee of Defendant NAI and Defendant BOARD and worked at the "Portico at Great Neck Condominium."

20. At all times relevant hereto, Defendant MURRILLO was Plaintiff BROWN's onsite supervisor, and had supervisory authority over Plaintiff BROWN including the power to fire Plaintiff BROWN, to discipline and supervise Plaintiff BROWN, to set the terms and conditions of Plaintiff BROWN and to give Plaintiff BROWN assignments.

21. At all times relevant hereto, Defendant SECURITAS, Defendant NAI, Defendant BOARD, and Defendant MURRILLO are collectively referred to herein as the "Defendants."

## MATERIAL FACTS

22. On or about January 4, 2013, Plaintiff BROWN began working for Defendant SECURITAS as a full time "Security Officer" at the "Portico at Great Neck Condominium," earning $11.00 per hour.

23. On or about January 4, 2013, Robert Edwards, Defendant SECURITAS's Manager, told Plaintiff BROWN that Defendant MURRILLO would be her onsite supervisor at "Portico at Great Neck Condominium" and that she must comply with all of his instructions.

24. **However, almost immediately after Plaintiff BROWN began her employment with Defendants, Defendant MURRILLO began to consistently and continuously sexually harass and discriminate against Plaintiff BROWN solely due to her gender (female).**

25. By way of example, on or about January 23, 2013, Defendant MURRILLO told Plaintiff

4

BROWN to "mamma los huevos," which Plaintiff BROWN understood to mean **"suck my dick."** Plaintiff BROWN felt disgusted and horrified that Defendant MURRILLO, her immediate supervisor, would make such offensive comments to her.

26. Shockingly, Defendant MURRILLO continued to make sexually harassing comments to Plaintiff BROWN such as "mamammala Chochitas," which Plaintiff BROWN was told meant, "eat my pussy."

27. On or about January 30, 2013, while Plaintiff BROWN was in the gatehouse bathroom, Defendant MURRILLO approached her, and told her that he **"wants to make [Plaintiff BROWN] feel good," while placing his hand on Plaintiff BROWN's** lower thigh. Again, Plaintiff BROWN immediately objected to Defendant MURRILLO's behavior, telling him they would, "only be coworkers and never anything more."

28. Unfortunately, Plaintiff BROWN's explicit rebuke did nothing to dissuade Defendant MURRILLO. Immediately thereafter, he then attempted to hug Plaintiff BROWN, telling her repeatedly that he **"wants to make [her] feel good"** while she struggled to free herself from his grasp. Once free of Defendant MURRILLO's grasp, Plaintiff BROWN told Defendant MURRILLO she intended to report his sexually harassing and offensive conduct to Defendant SECURITAS.

29. However, the idea of being reported to Defendant SECURITAS did not dissuade Defendant MURRILLO from continuing his pattern of sexual harassment.

30. On or about February 1, 2013, Defendant MURRILLO sent Plaintiff BROWN a **text message containing a video of a man playing with his penis**, which upon information and belief, is Defendant MURRILLO playing with his own penis.

31. Disgusted and outraged, also **on or about February 1, 2013, Plaintiff BROWN**

5

**immediately reported Defendant MURRILLO's sexual harassment** to Susan Cirrone, Defendant SECURITAS's Branch Manager, and Alison Kelley, Defendant SECURITAS's Area Human Resources Manager. Susan Cirrone told Plaintiff BROWN not to return to "Portico at Great Neck Condominium," and stay home for one (1) week while Defendants investigate her allegations and look for another for another site at which to place Plaintiff BROWN. Susan Cirrone also told Plaintiff BROWN that she would be on paid leave while Defendants conduct their investigation.

32. On or about February 6, 2013, while Plaintiff BROWN was on her forced leave of absence, Plaintiff BROWN personally met with Susan Cirrone and Alison Kelley during which Plaintiff BROWN pleaded with Ms. Cirrone and Ms. Kelley to either reinstate her at "Portico at Great Neck Condominium" or place her at another location in a similar and comparable position. Rather shockingly, Susan Cirrone refused to allow Plaintiff BROWN to return to her position at "Portico at Great Neck Condominium" because "it's not safe."

33. Even worse, on or about February 7, 2013, Defendant SECURITAS completely stopped paying Plaintiff BROWN any wages at all. Plaintiff BROWN was absolutely distraught that she was being retaliated against and denied employment simply because she complained about sexual harassment.

34. As such, on or about February 11, 2013, Plaintiff BROWN called Defendant SECURITAS and spoke to Janet, who informed Plaintiff BROWN that Defendants were still searching for somewhere to place her and told her, "When I find something, I will contact you."

35. When Plaintiff BROWN asked Janet why Defendant SECURITAS stopped paying

Plaintiff BROWN her wages even though she was essentially suspended through no fault of her own, Janet told Plaintiff BROWN that she needed to speak to Susan Cirrone about any and all payroll issues.

36. Unfortunately, although Plaintiff BROWN left numerous voicemails for Susan Cirrone, Plaintiff BROWN never received any phone call back. Despite Plaintiff BROWN's frequent phone calls to Defendant SECURITAS as well as Susan Cirrone's promise that Plaintiff BROWN would only be on leave for one (1) week, Defendant SECURITAS nonetheless refused to allow Plaintiff BROWN to return to "Portico at Great Neck Condominium" and failed to place Plaintiff BROWN in a suitable full-time replacement position.

37. On or about February 20, 2013, Janet called Plaintiff BROWN and offered her a position in Melville, New York. However, since the position was at least forty-five (45) minutes further from her home than "Portico at Great Neck Condominium," Plaintiff BROWN felt compelled to decline this position and **reiterated that she simply wanted to continue working at "Portico at Great Neck Condominium" without being subjected to sexual harassment**.

38. During this same conversation, Janet mentioned to Plaintiff BROWN that she also had an opening for a part-time position (Saturday and Sunday) at Astoria Bank in New Hyde Park but refused to allow Plaintiff BROWN to work in that position because "I want to place you somewhere full time."

39. On or about February 21, 2013, Sharon Messier, Defendant NAI's Property Manager, sent an email to Susan Cirrone stating, "Due to the allegations made by Sara, Elvin was terminated from Portico. **We don't want Sara to be assigned to our property again**

7

**either,** as after reviewing Elvin's cell phone we did discover and he did confirm, that there were many prior personal communications between the two of them in the short while she was stationed at Portico. Why this last communication upset her is still unknown." While it is true that Plaintiff BROWN and Defendant MURRILLO had several innocent communications, Plaintiff BROWN in no way consented to being the target of lewd and sexually explicit behavior in the workplace. This email serves to show that Defendant NAI and Defendant BOARD were also retaliating against Plaintiff BROWN for complaining of sexual harassment.

40. In the alternative, it is clear that Defendant NAI and Defendant BOARD aided and abetted Defendant SECURITAS's retaliation by directing Defendant SECURITAS to refuse to reinstate Plaintiff BROWN to her former position.

41. On or about February 21, 2013, Plaintiff BROWN sent an email to Susan Cirrone in which she stated, "I have been trying to contact Sue & Alison by phone to get back on to the schedule but I haven't been able to reach anyone. I had complained to Sue & Alison about receiving a lewd video from my onsite supervisor, Elvin, as well as other harassment. I was told not to come in for my shifts and that I would be paid for time spent out of work while the investigation was conducted. I have not been paid for the past pay period, I have not been asked to return to work, and I have not heard anything about the investigation. If I do not have to continue working with Elvin, I would really like to continue working at Portico in Great Neck."

42. On or about February 21, 2013, Susan Cirrone emailed Plaintiff BROWN stating, "Sarah, u were told you would be paid for the 1 week which you were. We have offered you a couple of sites you turned them down. I will be in the office tomorrow, call me around

8

11 and we can talk."

43. On or about February 23, 2013, Plaintiff BROWN sent an email to Susan Cirrone stating, "I tried calling you as you suggested, but I think we missed each other again. I left messages with the receptionist as well. I will try you again on Monday. I was offered to work at the Melville Long Island location (8am-4pm full time m-f), but it is a substantially longer commute and would be very difficult for me to get there in a timely manner for my shift each day. The only other site discussed was New Hyde Park @ Astoria bank on weekends. I was willing to take that job until a suitable full time position was found, but Janet told me that she wants to place a permanent part time employee there and was not considering me. Unfortunately the one site is all I have been offered since I've been out of work. I did not turn any offers down it was just not a good fit for me & nothing else has come up since. I would like to continue working at Portico in Great Neck if I don't have to work with Elvin. The commute was doable and the rate of pay was very good. Hopefully we'll get an opportunity to speak on Monday. I'd like to know if there was an investigation and if Elvin is still working at the Portico site. I really don't have the resources to remain out of work much longer."

44. Only minutes later, Susan Cirrone replied to Plaintiff BROWN's email in which she stated, "I will gladly put u at Astoria… I will tell Janet. Please call her on Monday."

45. On or about February 27, 2013, Plaintiff BROWN again emailed Susan Cirrone pleading to be reinstated at "Portico at Great Neck Condominium." However, Plaintiff BROWN never received any response to this email.

46. On or about March 2, 2013, Defendant SECURITAS placed Plaintiff BROWN at Astoria Federal Savings Bank, where **Plaintiff BROWN was working only approximately**

9

**sixteen (16) hours per week, a substantial downgrade from her former full time position.**

47. In or about mid-April 2013, Plaintiff BROWN again called Susan Cirrone and again asked to be reinstated to her former full time position at "Portico at Great Neck Condominium," especially since Plaintiff BROWN learned that Defendant MURRILLO hadn't been working there for almost two (2) months. Unfortunately, due to Defendant SECURITAS's own retaliatory motives as well as Defendant NAI's and Defendant BOARD's clear instructions not to allow Plaintiff BROWN to return, Susan Cirrone flatly refused.

48. In fact, to date, since complaining of sexual harassment, Defendants have never allowed Plaintiff BROWN to return to her previous full time position nor have they placed Plaintiff BROWN in another comparable position.

49. On or about May 30, 2013 Plaintiff BROWN resigned her Part time Astoria Federal Savings Bank Position with Defendant SECURITAS because her onsite supervisor continued to make conversation about male sexual predators and pedophilia over the Plaintiff's objection, and despite the Plaintiff's complaint to Susan Cirrone.

50. **Thus, it is clear that on or about February 6, 2013, Defendants effectively terminated Plaintiff BROWN's employment solely in retaliation for complaining of sexual harassment.**

51. Plaintiff BROWN has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

52. **All Defendants' actions and conduct were intentional and intended to harm Plaintiff**

**BROWN**.

53. The above are just some of the acts of discrimination that Plaintiff BROWN experienced on a regular and continual basis while employed by Defendants.

54. As a result of all Defendants' actions, Plaintiff BROWN feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Plaintiff BROWN has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. As a result of the above, Plaintiff BROWN has been damaged in an amount in excess of the jurisdiction of the Court.

57. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff BROWN demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against any Individual Defendant)

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

59. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of the Defendants' violation of Title VII's prohibition against discrimination in employment

based, in whole or in part, upon an employee's gender (sexual harassment).

60. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

63. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully she herein at length.

65. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing

genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

66. All Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice for "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

69. All Defendants save Defendant Murrillo violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice for "any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

72. All Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the

discriminatory conduct.

## JURY DEMAND

73. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the New York State Executive Law, in that Defendants sexually assaulted and battered, sexually harassed, discriminated against, and retaliated against Plaintiff on the basis of her gender;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and,

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
September 29, 2014

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

14

>Edward Kennedy (Ek1633)
>*Attorneys for Plaintiff*
>45 Broadway, Suite 620
>New York, NY 10006
>P: (212) 248-7431
>F: (212) 901-2107